UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

| | |
|---|---|
| NAOMI M. SPICER, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:14-cv-00587 |
| v. ) | |
| ) | Honorable Paul L. Maloney |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g), seeking review of a final decision of the Commissioner of Social Security denying plaintiff's application for disability insurance benefits (DIB).[1]  On March 1, 2007, plaintiff filed her application for benefits. (Page ID 272-76).  She claimed a January 5, 2006, onset of disability. (Page ID 272).  Plaintiff's claim was denied on initial review, and she received a hearing on October 6, 2009, before Administrative Law Judge (ALJ). (Page ID 108).  The ALJ issued a decision on December 4, 2009, finding that plaintiff was not disabled through the date of that decision. (Page ID 157-63).

The Appeals Council granted plaintiff's request for review based on the submission of new material evidence. (Page ID 170).  That evidence was in the form

---

[1] Plaintiff's name at the time she filed her application for DIB benefits was Naomi M. Fleetwood.  She later married Mr. Spicer and changed her last name to his. (Page ID 59-60).

of two separate functional limitation opinions from plaintiff's treating physician, Stephen Dallas, M.D. (*Id.*). On November 24, 2010, the Appeals Council remanded the case for a new hearing and decision. (Page ID 169-71). The Council directed the ALJ to, among other things, "evaluate the treating source opinion from Dr. Dallas pursuant to the provisions of 20 CFR 404.1527 and Social Security Ruling 96-2p, and explain the weight given to such opinion evidence." (*Id.*).

The case was assigned to a different ALJ on remand. (*See* Page ID 39). On January 13, 2012, plaintiff received a hearing at which she was represented by counsel. (Page ID 57-107). On February 24, 2012, the ALJ issued his decision finding that plaintiff was not disabled. (Page ID 39-48). On May 31, 2013, the Appeals Council denied review (Page ID 26-29), and the ALJ's decision became the Commissioner's final decision.

Plaintiff filed a complaint seeking judicial review of the Commissioner's decision. She asks the court to overturn the Commissioner's decision on the following grounds:

1. The ALJ committed reversible error by not properly considering the opinion of Plaintiff's treating physicians.

2. The ALJ did not have substantial evidence to support his finding that plaintiff would have performed a substantial number of jobs.

(Pltf. Br. at 17, Dkt. 12, Page ID 826). The Commissioner's decision will be affirmed.

## Standard of Review

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v.*

*Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007).

The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833 (6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Gayheart v. Commissioner*, 710 F.3d 365, 374 (6th Cir. 2013)("A reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would have supported the opposite conclusion."). "[T]he Commissioner's decision cannot be

overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

## The ALJ's Findings

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on September 30, 2011, but not thereafter. Plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of January 5, 2006, through her date last insured of September 30, 2011. (Op. at 3, Page ID 41).[2] Through her date last insured, plaintiff had the following severe impairments: "degenerative disc disease cervical spine status post C5-7 fusion with right upper extremity radiculopathy, degenerative disc disease lumbar spine, osteoarthritis right shoulder status post acromioclavicular surgery, and headaches." (*Id.*). Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the listing of impairments. (Op. at 5, Page ID 43).

The ALJ found that, through her date last insured, plaintiff retained the residual functional capacity (RFC) for a limited range of light work, with the following additional limitations:

> occasionally lift 10 pounds, sit for approximately six hours, stand or walk
> for approximately two hours in an eight-hour day with normal breaks,

---

[2]Inasmuch as her disability insured status expired on September 30, 2011, it was plaintiff's burden to submit evidence demonstrating that she was disabled on or September 30, 2011. *See Moon v. Sullivan*, 923 F.2d 1175, 1182 (6th Cir. 1990).

> sit/stand alternately at will provided not off task more than 10 percent of the workday; occasional push/pull with right upper extremity, occasionally climb ramps or stairs; never climb ladders, ropes or scaffolds; occasional balancing, stooping, kneeling, crouching; never crawling; no overhead reaching with right upper extremity; and avoid concentrated exposure to excessive vibration, concentrated exposure to workplace hazards such as moving machinery, and unprotected heights due to strong pain medication.

(*Id.*). He found that plaintiff's testimony regarding her subjective functional limitations was not fully credible. (Op. at 5-8, Page ID 43-46). The ALJ also found that through her date last insured, plaintiff was not able to perform any past relevant work. (Op. at 8, Page ID 46).

Plaintiff was 47-years-old as of her alleged onset of disability and 48 years old as of her date last insured. Thus, plaintiff was classified as a younger individual at all times relevant to her claim for DIB benefits. (Op. at 9, Page ID 47). Plaintiff has at least a high school education and is able to communicate in English. (*Id.*).

The ALJ then turned to the testimony of a vocational expert (VE). Plaintiff has acquired work skills from past relevant work. (*Id.*). The VE testified that plaintiff's past relevant work was semi-skilled with specific vocational preparation (SVP) code of SVP-4 and required the following skills: billing/ordering and keyboarding/computer use. (Page ID 71-73). The VE testified that there were transferable skills from these semi-skilled jobs that could be performed at the lighter level. (Page ID 73). Sedentary semi-skilled jobs plaintiff was able to perform included "billing clerks," for which there are approximately 5,000 jobs in Michigan, and "order clerks," for which there are approximately 6,000 jobs in the state of Michigan. (*Id.*).

In response to a hypothetical question regarding a person of plaintiff's age, and with her RFC, education, and work experience, the VE testified that there are a number of additional jobs in Michigan that the hypothetical person would be capable of performing. (Page ID 98-99). These included: "assemblers," for which there are approximately 1,500 jobs in Michigan; "[s]ome security guard monitors," for which there are approximately 1,000 jobs in Michigan; and "some cashier positions," for which there are approximately 1,000 jobs in Michigan. (Page ID 99). The ALJ found that the total of approximately 14,500 jobs constituted a significant number of jobs. (Op. at 9, Page ID 47). Using Rule 201.22 of the Medical-Vocational Guidelines as a framework, the ALJ held that plaintiff was not disabled. (Op, at 9-10, Page ID 47-48).

## Discussion

### 1.

Plaintiff argues that the ALJ violated the treating physician rule by failing to give appropriate consideration to the functional limitation opinions of plaintiff's treating physician Stephen Dallas, M.D. (Pltf. Br. at 17, Page ID 826). In reviewing the record, it appears that Dr. Dallas rendered functional limitation opinions on three occasions.

The first is a Medical Examination Report, dated January 22, 2010. (Page ID 720-22). In that report, Dr. Dallas noted that he had diagnosed plaintiff with "chronic pain syndrome, paralumbar spinal spasms, [right upper extremity] radicular pain, restless leg syndrome, [and] chronic C-spine pain." (Page ID 720). He indicated a number of functional limitations by checking certain boxes on the form. These

included that plaintiff could "occasionally" lift or carry less than ten pounds; she could "stand and/or walk less than 2 hours in an 8-hour work day"; she could "sit less than 6 hours in an 8-hour work day"; and she would not be able to use her hands and arms for reaching, pushing/pulling, and fine manipulating. (Page ID 721). Dr. Dallas noted that plaintiff's abilities to dress and undress, her stance, her gait, her fatigue, her pain level, and her alertness were all normal; he also noted that she did not require an ambulatory assistive device. (Page ID 720-21). Dr. Dallas concluded that plaintiff's pain prevents her from returning to work. (Page ID 721). When asked to provide the medical findings that support the above-listed physical limitations, Dr. Dallas simply stated: "disabling myofacial/neurological pain [since her motor vehicle accident]." (Page ID 722).[3]

The second is a single-page letter, dated February 22, 2011, in which Dr. Dallas states that plaintiff suffered a "traumatic brain injury" in the July 2005 automobile accident. He also stated that plaintiff suffers "recurring thoracic and lumbar spine pain," the result of which "she has been disabled by continuous pain of mixed etiologies – neuropathic, myofascial, and musculoskeletal." The doctor noted: "Pain is a clinical syndrome that we are unable to measure objectively. As such we rely on the patient's report, changes in ability to function, and in quality of daily life." Dr. Dallas concluded

---

[3] Plaintiff was injured in a car accident on July 11, 2005, when she attempted to avoid hitting a deer and ran into a tree. (Page ID 470). An MRI of plaintiff's cervical spine revealed: "mild disc space thinning at C6-7 with marginal osteophytes including posterior osteophytes"; "normal alignment"; "uncovertebral spurring at C5-6 and C6-7 levels"; and "no evidence for fracture." (Page ID 473).

that plaintiff's condition "renders her unable to perform any meaningful work." (Page ID 739).

The third is a medical assessment form Dr. Dallas, completed on January 26, 2012. (Page ID 797-800). This form allowed the doctor to answer certain questions with circles and checkmarks. At that time, Dr. Dallas noted that plaintiff could sit, stand and walk for one hour at a time, and one hour total during an eight-hour workday. (Page ID 797). He noted that plaintiff could "occasionally" lift and carry up to five pounds; that she could "occasionally" grasp or perform fine manipulation with either hand; and that she could "occasionally" push or pull up to ten pounds with either hand. (Page ID 797-98). He noted that plaintiff could "never" reach overhead with her right shoulder or climb ladders; she could "occasionally" bend, twist, reach overhead with her left shoulder, squat, kneel, crouch, crawl, or stoop; and she could "frequently" climb stairs. (Page ID 798). When asked to cite supportive medical findings, Dr. Dallas wrote that plaintiff "has significant decrease in dexterity [and] axial/truncal stability." (Page ID 799). Dr. Dallas opined that Plaintiff would be absent from work more than four days per month, and he reported that she elevates her legs up to seven to nine hours each day for pain relief. (Page ID 799). In the "remarks" section, Dr. Dallas noted that plaintiff had "suffered a traumatic injury [from a motor vehicle accident] including a mild degree of closed head injury which makes it (difficult) unlikely for her to be productive/safe in a work environment." (Page ID 800).

The ALJ gave Dr. Dallas's opinions regarding plaintiff's functional limitations "little weight." (Op. at 8, Page ID 46). He reasoned:

> While the evidence certainly shows some limitation of functioning with the upper extremities, there is nothing in the record to substantiate Dr. Dallas' restriction of no reaching, pulling and manipulating with the upper extremities. There is no reasonable justification to find claimant is not able to sit for six hours or stand two hours during an eight-hour workday. He does not point out a musculoskeletal explanation for this. The undersigned would also point out that Dr. Dallas has indicated claimant does not have any mental limitations, which is inconsistent with her exaggerated testimony. Finally, the regulations provide that the final responsibility for deciding such issues as to what an individual's residual functional capacity is and whether the residual functional capacity would prevent an individual from returning to work [are] issue[s] reserved to the Commissioner. (Social Security Ruling 96-5p).

(Op. at 7-8, Page ID 45-46).

The ALJ noted that Dr. Dallas's assertion that plaintiff suffered a closed head injury in the July 2005 automobile accident was unsupported by any medical evidence. (Op. at 8, Page ID 46). The ALJ also noted that the doctor's assertion that plaintiff "has had repeated physical and imaging evaluations" (Page ID 739) is unsubstantiated. (Op. at 8, Page ID 46).

Generally, the medical opinions of treating physicians are given substantial, if not controlling deference. *See Johnson v. Commissioner*, 652 F.3d 646, 651 (6th Cir. 2011). "[T]he opinion of a treating physician does not receive controlling weight merely by virtue of the fact that it is from a treating physician. Rather, it is accorded controlling weight where it is 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and is not 'inconsistent . . . with the other substantial evidence in the case record.'" *Massey v. Commissioner*, 409 F. App'x 917, 921 (6th Cir. 2011) (quoting *Blakley v. Commissioner*, 581 F.3d 399, 406 (6th Cir. 2009)). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported

by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). In *Gayheart v. Commissioner*, the Sixth Circuit explained that a treating physician's medical opinion is entitled to controlling weight where "two conditions are met: (1) the opinion 'is well supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" 710 F.3d at 376 (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)).

The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d at 773. An opinion that is based on the claimant's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Francis v. Commissioner*, 414 F. App'x 802, 804 (6th Cir. 2011) (A physician's statement that merely regurgitates a claimant's self-described symptoms "is not a medical opinion at all.").

Even when a treating source's medical opinion is not given controlling weight, it should not necessarily be completely rejected; the weight to be given to the opinion is determined by a set of factors, including treatment relationship, supportability, consistency, specialization, and other factors. *See Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions*, SSR 96-2p (reprinted at 1996 WL 374188 (SSA July 2, 1996)); 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martin v. Commissioner*, 170 F. App'x 369, 372 (6th Cir. 2006).

The Sixth Circuit has held that claimants are "entitled to receive good reasons for the weight accorded their treating sources independent of their substantive right to receive disability benefits." *Smith v. Commissioner*, 482 F.3d 873, 875-76 (6th Cir. 2007); *see Cole v. Astrue*, 661 F.3d 931, 937-38 (6th Cir. 2011); *Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004). "[T]he procedural requirement exists, in part, for claimants to understand why the administrative bureaucracy deems them not disabled when physicians are telling them that they are." *Smith*, 482 F.3d at 876; *see Gayheart v. Commissioner*, 710 F.3d at 376.

The administrative record in this case provides substantial evidence to support the ALJ's decision to give Dr. Dallas's opinions little weight. The ALJ also provided good reasons for making that determination.

The ALJ properly rejected Dr. Dallas's conclusions regarding plaintiff's ability to work. The issue of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1); *see Warner v. Commissioner*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion that a patient is disabled is not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d)(1), (3), 416.927(d)(1), (3); *cf. Bass v. McMahon*, 499 F.3d 506, 511 (6th Cir. 2007); *Sims v. Commissioner*, 406 F. App'x 977, 980 n.1 (6th Cir. 2011) ("[T]he determination of disability [is] the prerogative of the Commissioner, not the treating physician.").

The ALJ correctly considered the subjective nature of the bases for Dr. Dallas's opinions. Dr. Dallas acknowledged that his opinions regarding plaintiff's functional

limitations, which result from his assessment that she suffers from chronic pain, are largely based on plaintiff's subjective statements. (*See* Page ID 739 ("Pain is a clinical syndrome that we are unable to measure objectively. As such we rely on the patient's report, changes in ability to function, and in quality of daily life.")). Under the applicable regulations, "no special significance" is attached to treating physician opinions regarding the credibility of the plaintiff's subjective complaints, RFC, or whether the plaintiff's impairments meet or equal the requirements of a listed impairment because they are administrative issues reserved to the Commissioner. 20 C.F.R. §§ 404.1527(d)(2), (3), 416.927(d)(2), (3); *see Allen v. Commissioner*, 561 F.3d 646, 652 (6th Cir. 2009).[4]

The doctor's opinions regarding plaintiff's functional limitations are further undermined by the fact that they are largely reflected in check-the-box forms with little explanation. ALJs are not bound by conclusory statements of doctors, particularly where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation. *See Buxton v. Halter*, 246 F.3d at 773. "Form reports in which a doctor's obligation is only to check a box, without explanations of the doctor's medical conclusions are weak evidence at best." *Smith v. Commissioner*, No. 13-cv-12759, 2015 WL 899207, at * 14 (E.D. Mich. Mar. 3, 2015); *see also Ashley v. Commissioner*, No. 1:12-CV-1287, 2014 WL 1052357, at *8 n.6 (W.D.

---

[4]"We will not give any special significance to the source of an opinion on issues reserved to the Commissioner described in paragraphs (d)(1) and (d)(2) of this section." 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3); *see Blankenship v. Commissioner*, No. 14-2462, __ F. App'x __, 2015 WL 5040223, at * 9 (6th Cir. Aug. 26, 2015).

Mich. Mar. 19, 2014) ("Courts have increasingly questioned the evidentiary value of 'multiple choice' or 'check-off' opinion forms by treating physicians[.]").

Moreover, as the ALJ noted, Dr. Dallas's opinions are, for the most part, unsupported by the medical evidence. (Op. at 8, Page ID 46). Neither Dr. Dallas nor plaintiff cite to any diagnostic tests or other objective evidence to support the doctor's dire assessments of plaintiff's functional limitations. To the contrary, Dr. Dallas's opinions appear to be based, at least in part, on bald, and highly questionable, statements regarding plaintiff's purported medical condition. For example, he noted that he based his opinion that it would be "(difficult) unlikely for [plaintiff] to be productive/safe in a work environment" on his assertion that she "suffered a traumatic injury [from a motor vehicle accident] including a mild degree of closed head injury." (Page ID 800; *see also* Page ID 739 (asserting that plaintiff "suffer[ed] traumatic brain injury" in a July 2005 motor vehicle accident)). But, as noted by the ALJ, there is no evidence in the medical records of plaintiff ever having suffered a closed head injury. (Op. at 8, Page ID 46). This includes the hospital records relating to her July 2005 motor vehicle accident. (*See* Page ID 468-76).

### 2.

In her argument that the ALJ violated the treating physician's rule, plaintiff names other treating doctors who, she asserts, "indicated that [her] pain was real and that she was not able to perform substantial gainful activity (SGA) on a regular basis." (Pltf. Br. at 17, Page ID 826). The other named treating physicians are Alain Fabi, M.D.; Igor Kaps, M.D.; and Paula Kilmer, M.D. (*Id.*).

Plaintiff failed, however, to identify any medical opinion expressed by these doctors. "'Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)); *see United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996); *accord Curler v. Commissioner*, 561 F. App'x 464, 475 (6th Cir. 2014) ("[Plaintiff develops no argument to support a remand, and thus the request is waived."). Accordingly, the treating physician issue is deemed waived as to Doctors Fabi, Kaps, and Kilmer.[5]

Even if the issue had not been waived, plaintiff's arguments are unavailing. The ALJ is required to weigh only "medical opinions," 20 C.F.R. § 404.1527(c), which are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis and what [the claimant] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).

Having reviewed the record, the Court can find nothing from Doctors Fabi, Kaps, or Kilmer that qualify as a medical opinion entitled to special consideration under the

---

[5]Dr. Dallas was the only physician plaintiff's attorney identified under the category of "Claimant's Treating Physicians" in his May 31, 2011, Pre-Hearing Statement of Facts. (Page ID 463, 465).

Social Security regulations, and plaintiff cited to none in her opening brief. Even in response to the Commissioner's argument regarding plaintiff's failure to cite to any "medical opinion" issued by any of these doctors, plaintiff provides citations to treatment records (Reply Br. at 3-4, Page ID 861-62), only one of which includes any functional limitations.[6]

That is a "Medical Needs" form Dr. Fabi filled out on October 17, 2006. (Page ID 587-89). It is a check-the-box form that offers no explanation or justification for any of the functional limitations noted. Moreover, a number of the limitations are at odds with those cited by Dr. Dallas. For example, Dr. Fabi notes, unlike Dr. Dallas, that plaintiff can occasionally carry ten pounds, and that there is no limitation on plaintiff's ability to perform fine manipulation. (Page ID 589). Moreover, while Dr. Fabi notes the need to "reassess" the following month whether plaintiff is able to work at any job (Page ID 588), there appears to be no record of such reassessment. The October 17, 2006, form is not a medical opinion to which any special consideration is due. *See Buxton v. Halter*, 246 F.3d at 773; *Ashley v. Commissioner*, 2014 WL 1052357, at *8 n.6.

Within her argument regarding the treating physician rule, plaintiff notes her displeasure with the fact that the ALJ gave "significant weight" to the opinions of

---

[6]Arguments raised for the first time in a reply brief are waived. *See Sims v. Piper*, No. 07-14380, 2008 WL 3318746, at *4 (E.D. Mich. Aug. 8, 2008) (discussing the issue and citing various decisions); *see also United States v. Jerkins*, 871 F.2d 598, 601 (6th Cir. 1989) (Declining to address an issue not raised in the original brief, noting: "'It is impermissible to mention an issue for the first time in a reply brief because the appellee then has no opportunity to respond.'" (quoted citation omitted)).

neurosurgeon David Carr, D.O.  (Pltf. Br. at 17-18, Page ID 826-27).  Dr. Carr examined plaintiff on January 3, 2006; and, on May 16, 2007, after reviewing the medical records, he concluded that she was able to return to her activities prior to the July 2005 accident, including "occupational duties." (Op. at 7, Page ID 45).  Plaintiff's complaints are limited to the following two points:  (1) January 3, 2006, was the last date Dr. Carr saw plaintiff, and he relied thereafter on a review of her medical records; and (2) Dr. Carr was a "hired gun" for an insurance company.  (Pltf. Br. at 18, Page ID 827).

Plaintiff provides nothing upon which this Court could base a determination that the ALJ erred in relying on Dr. Carr's opinions, "hired gun" or not.  Accordingly, to the extent plaintiff is attempting to challenge the ALJ's reliance on Dr. Carr's opinions, the issue is deemed waived.  *See United States v. Stewart*, 628 F.3d at 256; *United States v. Elder*, 90 F.3d at 1118; *Curler v. Commissioner*, 561 F. App'x at 475.

**3.**

Plaintiff argues that the ALJ did not have substantial evidence to support his finding that plaintiff was capable of performing a significant number of jobs.  (Pltf. Br. at 19, Page ID 828).  Plaintiff contends that the hypothetical the ALJ presented to the vocational expert (VE) did not include all the limitations her treating physician, Dr. Dallas, proposed.  Plaintiff notes that, with those additional limitations, the VE testified that plaintiff was not capable of doing any work.  (*See id.* (referring to Page ID 103)).

Plaintiff's argument lacks merit. The ALJ questioned the VE using a hypothetical question based on plaintiff's age, educational background, and all the limitations in the RFC as of the date of last insured. (Page ID 98-99). As this Court has already held, there is substantial evidence to support the ALJ's findings regarding the weight – or more properly, the lack of weight – to be given Dr. Dallas's functional limitation opinions. There is otherwise substantial evidence to support the RFC findings of the ALJ.

The VE responded that there were a total of some 14,500 jobs in Michigan that plaintiff was capable of performing. (Page ID 73, 99). Accordingly, there is a significant number of jobs plaintiff is capable of performing with all the limitations listed in the RFC. *See Smith v Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

That the ALJ did not incorporate all the limitations suggested by Dr. Dallas was not error. The ALJ is not required to incorporate limitations based on opinions he has properly rejected. *See Valdes v. Commissioner*, No. 1:08-CV-872, 2010 WL 911181, at *3 (W.D. Mich. Mar. 12, 2010); *see also Infantado v. Astrue*, 263 F. App'x 469, 476-77 (6th Cir. 2009) ("It is well established that the hypothetical questions need only incorporate ... those limitations which the ALJ has accepted as credible."); *cf. Grifeth v. Commissioner*, 217 F. App'x 425, 429 (6th Cir. 2007) ("An ALJ is not required to accept a claimant's subjective complaints, and 'can present a hypothetical to the VE on

the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate.'" (quoting *Jones v. Commissioner*, 336 F.3d at 476).  The fact that the ALJ chose to pose a hypothetical question to the vocational expert that included Dr. Dallas's opinions regarding the plaintiff's functional limitations did not obligate the ALJ to issue a ruling based on the answer given.  *Valdes,* 2010 WL 911181, at *3.

## **Conclusion**

For the reasons set forth herein,  the Commissioner's decision will be affirmed.


Dated:   September 28, 2015             /s/ Paul L. Maloney
                                                                      Paul L. Maloney
                                                                      United States District Judge